**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | |
|---|---|
| **MAURICE R. GOINS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 09-1223** |
| **v.** ) | |
| ) | **Magistrate Judge Maureen P. Kelly** |
| **SEC. OF CORRECTIONS JEFFREY** ) | |
| **BEARD, SOBINA, HALL, GIROUX,** ) | **[Re: ECF No. 40]** |
| **CLARK, REILLY, DANIEL and JONES,)** | |
| ) | |
| **Defendants.** ) | |

## <u>OPINION</u>

KELLY, Magistrate Judge

Plaintiff, Maurice R. Goins ("Goins"), a frequent litigator in this Court,[1] initiated this *pro se* civil rights action complaining about the procedure employed by the staff at the State Correctional Institution at Albion ("SCI-Albion") with regard to his placement in a Special Management Unit ("SMU") and transfer to the State Correctional Institution at Fayette ("SCI-Fayette"). The Complaint and Amended Complaint name eight defendants, all Department of Corrections ("DOC") personnel. Defendants purportedly each had a role in Plaintiff's placement in the SMU without a hearing and, allegedly, without regard to the impact such placement would have on his mental health. Because of the alleged impropriety of his placement in the SMU, Plaintiff seeks redress of alleged violations of the First, Third, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution; 18 U.S.C. §§ 241, 242; the American with

---

[1] Plaintiff has commenced a total of ten actions in this Court, five petitions for habeas corpus and, including the instant action, five separate civil rights actions: <u>Goins v. Gillis</u>, 2:2004-cv-01300; <u>Goins v. Beard</u>, 2:2008-cv-01037; <u>Goins v. Commonwealth of Pennsylvania</u>, 2:2009-cv-00913; <u>Goins v. Beard</u>, 2:2009-cv-01484; <u>Goins v. Kanai</u>, 2:2007-cv-00072; <u>Goins v. James</u>, 2:2007-cv-00460; <u>Goins v. Cassidy</u>, 2:2010-cv-00112; <u>Goins v. Coleman</u>, 2:2010-cv-00652; <u>Goins v. McDaniel</u>, 2:2010-cv-01102.

Disabilities Act; the Freedom of Information and Privacy Acts of 1974; 42 U.S.C.A. §§ 1983,

1985 and 1986; the Pennsylvania Mental Health Procedures Act; the Pennsylvania Drug and

Alcohol Abuse Act; as well as the Pennsylvania Confidentiality of HIV-Related Information Act.

The Defendants, represented by the Pennsylvania Attorney General's Office, have filed a Motion

to Dismiss the Complaint for failure to state a claim upon which relief can be granted [ECF No.

40]. For the reasons set forth herein, the Motion to Dismiss is granted.

## I.   BACKGROUND

### A.  Relevant Procedural History

Plaintiff commenced this action on September 9, 2009, with the filing of a Temporary

Restraining Order and Order to Show Cause for a Preliminary Injunction ("TRO") [ECF No. 1].

The TRO was voluntarily dismissed after the filing of numerous amendments and self-styled

motions, including a motion to destroy his initial filings, which was denied [ECF Nos. 7, 9, 11].

Subsequently, on March 12, 2010, Plaintiff filed a Complaint [ECF No. 17] and on April 16,

2010, a "Complaint 'Amended'" [ECF No. 22], with yet another supplement on May 13, 2010

[ECF No. 23]. On January 11, 2011, after service of the Amended Complaint and the

supplement, Defendants filed their Motion to Dismiss [ECF No. 40]. Plaintiff responded four

months later with an "Affidavit in Opposition to the Motion to Dismiss."[2] [ECF No. 50].

---

[2] The Affidavit sets forth new claims not contained in either the Complaint or the attempted supplemental
Complaint, including a claim for retaliation in violation of the First Amendment to the U.S. Constitution and a
separate Eighth Amendment claim for denial of adequate mental health services [ECF No. 50]. To the extent that
the allegations contained in the Affidavit are an impermissible attempt to further supplement his complaint, they will
not be addressed in this action. Fed. R.Civ.P. 15(d) addresses the propriety of supplemental pleadings when a party
seeks to set out any transaction, occurrence, or event that happened after the date of the pleading to be
supplemented. The factors to be considered in deciding whether to permit supplementation pursuant to Rule 15(d)
are clearly set forth in Nottingham v. Peoria, 709 F. Supp. 542, 544 (M.D. Pa. 1988). Leave to amend should be
freely given "[i]n the absence of any apparent or declared reason-such as undue delay, bad faith, or dilatory motive
on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice
to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Id., citing,  Foman v.
Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Court finds that Plaintiff's attempted further
supplementation to add new claims would certainly be prejudicial and needlessly delay the resolution of this matter.
Plaintiff has amended his complaint once (his "Attempted Supplement Complaint"), prior to the filing of

B. **Plaintiff's Complaint and Amended Complaint**.[3]

Plaintiff, an inmate serving a sentence of 20 to 40 years, acknowledges that as a result of disciplinary issues, he was placed in the Restricted Housing Unit ("RHU") at SCI Albion on August 1, 2008.  Plaintiff's current Complaint arises out of his subsequent placement and transfer to a more controlled Special Management Unit ("SMU") at SCI Fayette as a result of an assault on a staff member in the RHU at SCI Albion on July 3, 2009.  Plaintiff alleges that on July 30, 2009, he had been scheduled for a routine Program Review Committee meeting with Defendants Giroux, Clark and Hall to determine the propriety of his continued placement in the RHU.  However, the meeting was abruptly cancelled and Plaintiff later received notification that he was being transferred to the SMU at SCI Fayette.  [ECF No. 22, ¶ V.C.1 and ECF No. 50, p.4 ¶ 21].

Plaintiff alleges that his transfer to the SMU at SCI Fayette occurred without a hearing, which he contends is required by DOC policy. [ECF No. 22, ¶ V.C.2].  He further alleges that while his psychological records were reviewed in conjunction with his placement in the SMU at SCI Fayette, this review was completed without his written informed consent and therefore violated his right to privacy. [ECF No. 22, ¶ V.C.9].  Plaintiff asserts that prior to his transfer to the SMU at Fayette, he was entitled to an in-person psychological evaluation to determine the propriety of placement in a more restricted environment.  Because this evaluation was completed

---

Defendant's Motion to Dismiss, and Defendant has therefore had an opportunity to address the claims therein.  In reviewing the Affidavit, the new claims are with respect to events occurring after those in the original complaint and first supplement thereto and so are not related to the claims within the meaning of Fed.R.Civ.P. 15(d).  Further, given Plaintiff's filing of a Motion to Amend Complaint days after the submission of the Affidavit at issue to correct the identity of one of the Defendants, it is clear that if Plaintiff intended to assert these claims as additional causes of action, he had the knowledge and ability to do so.  Razzoli v. Director, Bureau of Prisons, 293 F.Appx. 852, 855 (3d Cir. 2008).

[3] Plaintiff has filed a Complaint [ECF No. 17] and an Amended Complaint [ECF No. 22].  Each pleading contains claims that were not merged into one Amended Complaint.  However, Defendants' Motion to Dismiss addresses all of Plaintiff's claims as though they were merged.  Given Plaintiff's *pro se* status, the Court will also consider the allegations and claims set forth in both pleadings as though they have been merged into one document.

by a review of his psychological records instead of an in-person interview, Plaintiff contends his

placement violated his constitutional and statutory rights.  Plaintiff further alleges that he

appealed his placement in the SMU at SCI Fayette to a lengthy list of DOC personnel.  In

response to one of his appeals, Deputy Superintendent Johnson informed him that as a result of

the July 3, 3009, assault:

> [a]fter a thorough psychological evaluation by the SCI Albion psychology staff,
> the Administration at SCI Albion recommended that you be reviewed and
> considered for SMU placement.  At that time, a referral packet was submitted to
> Central Office, where a panel of qualified individuals reviewed and agreed that
> you were in fact an appropriate candidate for placement in the SMU program.

[ECF No. 22, ¶ V.C.8].

Plaintiff names as Defendants the DOC employees who either recommended his

placement, failed to reverse the recommendation, granted access to his psychological records for

use in determining the propriety of his placement, or failed to grant him a hearing. Plaintiff also

alleges that certain DOC employees submitted "falsified information and records in [his] inmate

records search relating to this process."  [ECF No. 22, ¶ IV.C.13]. Plaintiff, however, does not

describe the "falsified information" and merely asserts its existence.

As a result of the alleged violation of his privacy in using Plaintiff's psychological

records for placement purposes, and the alleged violation of his rights by placing him in the

SMU without affording him a hearing, Plaintiff seeks a compensatory damage award in the sum

of $1,920,000 against each Defendant and punitive damages in the amount of $15,360,000

against each Defendant.  Plaintiff also seeks injunctive relief including the destruction of all

records pertaining to his placement in SMU and the elimination of all remaining time to be

served in disciplinary custody.  Plaintiff demands the full names and home addresses of all

involved DOC personnel and a lien on each of their personal assets.  Finally, Plaintiff seeks the revocation of Defendant Reilly's psychology license in the Commonwealth of Pennsylvania.

## II.      STANDARD OF REVIEW AND THE PLRA

As the United States Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint may properly be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974.  Under this standard, the Court must, as a general rule, accept as true all factual allegations of the Complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985). Nevertheless, under the 12(b)(6) standard, a "court need not ... accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001), *amended by*, 275 F.3d 1187 (9th Cir. 2001). Thus, in making this determination, in addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint. <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).

The Court also need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. <u>See California Public Employees' Retirement System v. Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) (*citing* <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions set forth as factual allegations. <u>Bell Atlantic Corp.</u>, 550 U.S. at 564, 127 S.Ct. 1955, at 1965, 167 L.Ed.2d 929 (*quoting* <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level…."

<u>Twombly</u>, 550 U.S. at 556.  Although the Court does not require "heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." <u>Smith v. Sullivan</u>, No. 07-758-SLR, 2008 WL 482469, at *1 (D. Del. 2008) (*quoting* <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008)).  "This 'does not impose a probability requirement at the pleading stage,' but instead, 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." <u>Phillips</u>, 515 F.3d at 232 (*quoting* <u>Twombly</u>, 550 U.S. at 556 n.3).

Recently, the Third Circuit expounded on the Twombly/Iqbal/Phillips line of cases:

To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.

\* \* \*

After <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in <u>Iqbal</u>, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 211 (3d Cir. 2009).

In addition, because Plaintiff is a prisoner complaining of "prison conditions" and naming governmental entities or employees thereof as defendants, the screening provisions of the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A, as well as the provisions of 42 U.S.C. § 1997e apply. The Court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the Court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., No. 06-115E, 2007 WL 1811198, *4 (W.D. Pa. June 21, 2007), *aff'd*, 264 Fed.Appx. 183 (3d Cir. 2008).

## III.    FOURTEENTH AMENDMENT DUE PROCESS CLAIMS.

Reading Plaintiff's Complaint and Amended Complaint broadly, it appears that Plaintiff is attempting to make out two Fourteenth Amendment procedural due process claims, one resulting from his placement in the SMU without a hearing and one resulting from the failure of the prison grievance process to reverse his SMU placement. Both claims fail as a matter of law.

First, Plaintiff fails to state a claim for relief arising out of his placement in the SMU without a hearing. A procedural due process analysis involves a two-step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process Clause and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

Turning to the first question, the Due Process Clause protects a prisoner's right to "freedom from restraint, which, while not exceeding the sentence in such an unexpected manner

7

as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship in relation to the ordinary incidents of prison life." Wilkinson v. Austin, 545 U.S. 209, 223, 125 S.Ct. 2384, 2393-2394, 162 L.Ed.2d 174 (2005) (*quoting* Sandin v. Connor, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

As explained by the United States Supreme Court in Sandin, the proper focus for determining whether prison conditions impose an atypical or significant hardship so as to give rise to a due process liberty interest is the nature of the conditions, not mandatory language in prison regulations. Sandin, 515 U.S. at 484.

In Sandin, an inmate was charged with violating prison regulations. Id. at 475.  At a hearing, the hearing committee refused the inmate's request to present witnesses. The committee found the inmate guilty and sentenced him to disciplinary segregation. Id. The inmate sought review, and a deputy administrator found some of the charges unfounded and expunged his disciplinary record. Id. at 476. Thereafter, the inmate filed suit pursuant to 42 U.S.C. § 1983 for a deprivation of procedural due process during the disciplinary hearing. Id. The Tenth Circuit found that he had a protected liberty interest because it interpreted the prison regulations to require that the committee find substantial evidence of misconduct before imposing segregation. Id. at 477. The Supreme Court reversed, finding no liberty interest. Id. at 484. In doing so, the Supreme Court rejected an approach that focused on whether the prison regulations "went beyond issuing mere procedural guidelines and has used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" Id. at 480 (*quoting* Hewitt v. Helms, 459 U.S. 460, 471-72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). The Court found this approach undesirable because it created a disincentive for prison administrators to codify prison management procedures and because it

"led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." Id. at 482. Thus, the Court held liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. In applying this test, the Court observed, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." Id. at 485. The Court then found that the inmate's disciplinary segregation "did not present a dramatic departure from the basic conditions of Conner's indeterminate sentence" because the conditions of disciplinary segregation were similar to those faced in administrative and protective custody. Id. at 486.

After Sandin, the United States Court of Appeals for the Third Circuit, in Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997), held that confinement in administrative custody for fifteen months with only one hour of exercise per day five days per week did not amount to an atypical and significant hardship and thus did not deprive a prisoner of a liberty interest:

> It is thus apparent that in the penal system to which Griffin was committed with due process of law, it is not extraordinary for inmates in a myriad of circumstances to find themselves exposed to the conditions to which Griffin was subjected. It is also apparent that it was not atypical for inmates to be exposed to those conditions, like Griffin, for a substantial period of time. Given the considerations that lead to transfers to administrative custody of inmates at risk from others, inmates at risk from themselves, and inmates deemed to be security risks, etc., one can conclude with confidence that stays of many months are not uncommon.
>
> For these reasons, we believe that exposure to the conditions of administrative custody for periods as long as 15 months "falls within the expected parameters of the sentence imposed [on him] by a court of law." It necessarily follows, in our view, that Griffin's commitment to and confinement in administrative custody did not deprive him of a liberty interest and that he was not entitled to due process protection.

Id. at 708.  As Plaintiff argues here, Griffin contended that his placement in Administrative Custody occurred without a hearing, in violation of Department of Corrections' regulations and, therefore, in violation of his procedural due process rights.   The Court, however, held that while a violation of a regulation may give rise to "some remedy in a state court," it does not trigger federal procedural due process:

> The central teaching of Sandin is that a state statute or regulation conferring a right is not alone enough to trigger due process.  The state law must confer "freedom from restraint which … imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at ---, 115 S.Ct. at 2300.  This Griffin's regulation does not do.

Id. The Court, citing Hewitt v. Helms, 459 U.S. 460, 470, 103 S.Ct. 864, 870-71, 74 L.Ed.2d 675 (1983), went on to find that "[t]he mere fact that Pennsylvania has created a careful procedural structure to regulate the use of administrative segregation does not indicate the existence of a protected liberty interest."  Id. at n.3.   Indeed, every court that has addressed this issue in Pennsylvania has determined that in the absence of exceptionally long periods of disciplinary custody (exceeding 15 months), prisoners do not have a liberty interest in remaining free from confinement in the SMU or similar housing.  See, e.g., Smith v. Dodrill, No. 4:07-cv-2295, 2009 WL 62175 (M.D. Pa. Jan. 8, 2009); Spencer v. Kelchner, No. 3:06-cv-1099, 2007 WL 88084 (M.D. Pa. Jan. 9, 2007); Dantzler v. Beard, No. 05-1727, 2007 WL 5018184 (W.D. Pa. Dec. 6, 2007); Francis v. Dodrill, No. 3:04-cv-1694, 2005 WL 2216582 (M.D.Pa. Sept. 12, 2005). Cf. Johnson v. Hill, 910 F.Supp. 218, 220 (E.D. Pa.1996) (holding that, absent a state-created liberty interest that does not exist in Pennsylvania, prisoner placement is a matter of prison administration and a prisoner has no constitutional right to be placed in any particular cell or housing unit).

Here, Plaintiff alleges that he was confined in the SMU for approximately eight months (July 30, 2009 through March 23, 2010).  In addition, Plaintiff alleges the violation of unspecified DOC regulations concerning the provision and content for hearings for inmates assigned to SMU placement. [ECF No. 22, ¶ V.C (1), (2), (9), (11) – (21)].  However, Plaintiff does not allege that the conditions of his confinement in the SMU are atypical or pose a significant hardship over and above other forms of administrative or disciplinary custody, or outside the expected parameters of his sentence.  Accordingly, Plaintiff has failed to state a claim for which relief can be granted for the alleged violation of his due process rights. See, e.g., Johnson v. Wenerowicz, No. 11-2248, 2011 WL 3235681 (3d Cir. July 29, 2011) (complaint properly dismissed where plaintiff alleged transfer to the SMU for a five month period where prescribed DOC procedures were not followed).

Finally, as alleged in his Amended Complaint, Plaintiff filed a grievance regarding his SMU placement, which was reviewed and answered at each level. [ECF No. 22, ¶¶ V, VI].  To the extent Plaintiff alleges a due process violation for Defendants' failure to grant his grievances regarding his placement in the SMU; he has failed to state a claim for which relief can be granted. It is well-established that inmates do not have a constitutionally protected right to a prison grievance system. Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977).  See also Mitchell v. Dodrill, 696 F. Supp. 454 (M.D. Pa. 2010) (grievance regulations providing administrative remedy procedure do not create liberty interest in access to that procedure). Thus, Plaintiff's claim that Defendants violated his constitutional rights by denying his grievances fails to state a claim and Defendants' Motion to Dismiss will be granted as to this claim.

## IV.   FOURTEENTH AMENDMENT RIGHT TO PRIVACY CLAIM

Plaintiff also alleges that in order to determine the propriety of placement in the SMU, an inmate's mental health records may be reviewed only if the inmate has provided written informed consent.  Plaintiff contends that any review of mental health records for purposes of placement without written informed consent violates an inmate's right to privacy.  Plaintiff alleges that his confidential psychological records were reviewed by DOC personnel without his consent when determining the propriety of his placement in the SMU, and therefore he is entitled to monetary damages and other injunctive relief. [ECF, No. 22, ¶ V.C. 8, 11, 12].   Presumably, Plaintiff's allegations give rise to a purported violation of a Fourteenth Amendment right to privacy.

While it is correct that prisoners have a constitutional right to privacy regarding the confidentiality of medical information, this right is not unfettered.  Indeed, the United States Court of Appeals for the Third Circuit has cautioned that "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen."  Doe v. Delie, 257 F.3d 309, 317 (3d Cir. 2001)  In short, a prisoner's constitutional right to privacy, including the preservation of the confidentiality of medical information, "is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security."  Id., *citing* Turner v.Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Courts must respect the administrative concerns underlying a prison regulation, without requiring proof that the regulation is the least restrictive means of addressing those concerns.  Doe, 257 F.3d at 317. Accordingly, where appropriate, an inmate does not have a right to conceal a medical condition from corrections officials.

Plaintiff's Amended Complaint specifically alleges that his psychological records were used in order to determine the propriety of his placement in the SMU. Plaintiff has not alleged that this private information was broadcast beyond appropriate DOC personnel or for use other than in determining his disciplinary placement. Accordingly, Plaintiff's allegations establish that the records review occurred in pursuit of legitimate correctional goals and to maintain institutional security. Plaintiff therefore fails to allege a violation of his right to privacy in his medical records and thus fails to state a claim upon which relief may be granted.

## V.   EIGHTH AMENDMENT CLAIM

Plaintiff's Complaint alleges a violation of his Eighth Amendment rights under the United States Constitution. However, in the absence of an allegation of facts that the conditions of his confinement in the SMU deprived him of any basic human need, or that he was "incarcerated under conditions posing a substantial risk of serious harm," or that prison officials demonstrated a "deliberate indifference" to his health or safety while he was housed in the SMU, Plaintiff fails to state an Eight Amendment claim and dismissal is appropriate. Johnson v. Wenerowicz, No. 11-2248, 2011 WL 3235681, at *2 (3d Cir. 2011). Indeed, confinement to segregation, whether administrative or punitive, fails to implicate the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions of such confinement are cruel and unusual. Hutto v. Finney, 437 U.S. 678, 686, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); Spaight v. Coughlin, 104 F.3d 350 (2d Cir. 1996), cert. denied, 519 U.S. 1121, 117 S.Ct. 972, 136 L.Ed.2d 855 (1997); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir. 1992); Sheley v. Dugger, 833 F.2d 1420, 1428-29 (11th Cir. 1987); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981), Stanley v. Zimmerman, 462 U.S. 1137, 103 S.Ct. 3123, 77 L.Ed.2d 1375 (1983) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual

punishment"). *Accord* Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).   Accordingly, because Plaintiff's Complaint does not allege any facts establishing that the conditions of confinement in the SMU pose a substantial risk of harm, Plaintiff's Eighth Amendment claim is dismissed.

## VI.    REMAINING CONSTITUTIONAL CLAIMS

In addition to the Eighth and Fourteenth Amendment, Plaintiff's Amended Complaint alleges violations of the First, Third, Fourth, Fifth and Ninth Amendments to the United States Constitution.  [ECF No. 22, ¶ IV].   For the reasons more fully set forth herein, each of these claims is also dismissed for failure to state a claim upon which relief can be granted.

### A.   First Amendment Claim

Plaintiff fails to state a First Amendment claim because he fails to allege the denial of any protected First Amendment activity.   Further, to the extent Plaintiff is invoking the First Amendment by implying that the denial of his grievances by the Defendants violated his right to petition the government, Plaintiff is simply mistaken. Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) ("the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance");  Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998).  Accordingly, Plaintiff's claim that his rights under the First Amendment were violated is dismissed.

### B.  Third Amendment Claim

Without explanation, Plaintiff claims that his rights under the Third Amendment to the U.S. Constitution have been violated.  The Third Amendment provides, "No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war,

but in a manner prescribed by law." U.S. Const. amend. III. Plaintiff does not assert that soldiers were quartered in his house unconstitutionally, and the Court can envision no possible set of facts entitling Plaintiff to relief. This claim, therefore, is dismissed.

### C. Fourth Amendment Claim

Plaintiff does not allege any facts supporting a Fourth Amendment claim against unwarranted search and seizure. There is no doubt that the protections of the Fourth Amendment with respect to seizures of a prisoner's effects or property do not apply in the prison context. Doe, 257 F.3d at 316 ("The Hudson court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration."). See also Hudson v. Palmer, 468 U.S. 517, 538, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(O'Connor concurring) ("The fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects."). Plaintiff's Fourth Amendment claim therefore is dismissed.

### D. Fifth Amendment Claim

Plaintiff has sued all state actors. The Fifth Amendment protects against federal governmental action. See, e.g., Falbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 158, 17 S.Ct. 56, 41 L.Ed. 369 (1896) ("The fifth amendment, which provides, among other things, that such property shall not be taken for public use without just compensation, applies only to the federal government, as has many times been decided."). There are no federal actors involved in the instant suit. As a result, Plaintiff's Fifth Amendment claim is dismissed for failing to state a claim upon which relief can be granted.

### E.  Ninth Amendment Claim

The Ninth Amendment claim alleged by Plaintiff is also without merit.  The Ninth

Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be

construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.  The

Ninth Amendment is not an independent source of individual rights; rather, it provides a "rule of

construction."  Accordingly, the Ninth Amendment does not protect against any of the events

described in Plaintiff's complaint and as such does not provide a basis for relief.  See, e.g., Perry

v. Lackawanna County Children & Youth Services, 345 F.Appx. 723, 726 (3d Cir. 2009) *citing*

Jenkins v. C.I.R., 483 F.3d 90, 92 (2d Cir. 2007); Schowengerdt v. United States, 944 F.2d 483,

490 (9th Cir. 1991).

### VII.    MISCELLANEOUS CLAIMS

#### A.  FOIA and Privacy Act

To the extent Plaintiff asserts a claim under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, et. seq., and The Privacy Act of 1974, 5 U.S.C § 552(a) ("Privacy Act"), Plaintiff

has failed to state a claim for which relief can be granted.  First, Plaintiff does not allege a

violation of FOIA.  Second, a cause of action under the Privacy Act must be against a federal

agency, as specified in 5 U.S.C. § 551(1), which defines agency as "each authority of the

Government of the United States."  An agency of a state government, such as the Pennsylvania

Department of Corrections, is not subject to the Privacy Act.  See Schmitt v. City of Detroit,  395

F.3d 327, 328 (6th Cir. 2005) (holding that the Privacy Act applies exclusively to federal

agencies); Pennyfeather v. Tessler, 431 F.3d 54, 56 (2d Cir. 2005) (concluding that there is no

right of action under the Privacy Act against a municipal or state agency); Bavido v. Apfel, 215

F.3d 743, 747 (7th Cir. 2000) (same); Dittman v. State of California, 191 F.3d 1020, 1026 (9th

Cir. 1999) (civil remedy provision of Privacy Act does not apply to actions against state agencies); Windsor v. The Tennessean, 719 F.2d 155, 159-60 (6th Cir. 1983). Third, even if the Privacy Act applied to state agencies, Plaintiff could not maintain this suit against these particular Defendants, who he is suing in their individual capacities. The Privacy Act states in part that "[w]henever any agency fails to comply with any ... provision of this section ... in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency ...." 5 U.S.C. § 552a(g)(1)(D). Therefore, the right of individuals to enforce the Privacy Act is limited to actions against agencies, but does not apply to officials or employees of the agencies. See Schmitt, 395 F.3d at 328; Pennyfeather, 431 F.3d at 56; Dittman, 191 F.3d at 1026; Connelly v. Comptroller of the Currency, 875 F.2d 1209, 1215 (5th Cir. 1989); Polchowski v. Gorris, 714 F.2d 749, 752 (7th Cir. 1983); Wren v. Harris, 675 F.2d 1144, 1148 n. 8 (10th Cir. 1982).  Accordingly, Plaintiff's claims under FOIA and Privacy Act are dismissed for failure to state a claim.

### B.  Criminal Statutes

Plaintiff's Complaint invokes Title 18 criminal statutes; specifically, 18 U.S.C. §§ 241 and 242.  However, these statutes do not provide for a private cause of action and therefore a violation of either cannot form the basis of a civil suit.  See, e.g., Walthour v. Herron, C.A. No. 10-01495, 2010 WL 1877704 at *3 (E.D.Pa. May 6, 2010) (no private right of action exists under 18 U.S.C. §§ 241, 242), Jones v. Lockett, C.A. No. 08-16, 2009 WL 2232812 at *8 (W.D.Pa. July 23, 2009) ("It is clear that the criminal statutes invoked by Plaintiff, i.e., 18 U.S.C. §§ 241, 371 and 1341 do not provide for a private cause of action. In other words, those statues do not confer a right to a person.") (collecting cases). Accordingly, to the extent Plaintiff has

asserted a claim under Title 18, he has failed to allege a claim for which relief can be granted and his claim, therefore, is dismissed.

### C.  42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).  As more fully set forth herein, Plaintiff has failed to state a claim for an underlying constitutional violation and, accordingly, has failed to state a claim for which 42 U.S.C. § 1983 may be invoked for relief.  See, e.g., City of Los Angeles v. Heller, 475 U.S. 769, 799 (1986); Camp v. Brennan, 54 F.Appx. 78, 81-82 (3d Cir. 2002).

### D.  42 U.S.C. § 1985

In his Complaint [ECF No.17], Plaintiff also cites 42 U.S.C. § 1985 as a basis for his action. Section 1985(3) establishes a cause of action "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). It is well settled that "because § 1985(3) requires the 'intent to deprive of equal protection, or equal privileges and immunities,' a claimant must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' in order to state a claim." Farber v. City of Paterson, 440

F.3d 131, 135 (3d Cir. 2006) (*quoting* <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

In order to assert a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person, property, or the deprivation of any right. <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d Cir. 1997). The United States Court of Appeals for the Third Circuit has explained: "a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." <u>Farber</u>, 440 F.3d at 135 (citation omitted).

In this case, Plaintiff has failed to plead the requisites of a § 1985(3) conspiracy, as the pleadings of record are devoid of allegations that Defendants' alleged conspiracy was motivated by a class-based, invidiously discriminatory animus. Nor do his pleadings show that he suffered any injury to his person or property or that he was deprived of any right. "[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim." <u>D.R. by L.R. v. Middle Bucks Area Vocational Technical School</u>, 972 F.2d 1364, 1376 (3d Cir. 1992), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). Accordingly, Plaintiff has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1985. <u>United States ex rel. Simmons v. Zibilich</u>, 542 F.2d 259 (5th Cir. 1976) (dismissal of cause of action for damages arising out of alleged conspiracy to interfere with civil rights was proper where convict's conclusory pleadings failed to allege any facts on which to base a conspiracy charge).

### E.  42 U.S.C. § 1986

Plaintiff also alleges liability under 42 U.S.C. § 1986.  The statute provides as follows:

1986. Action for neglect to prevent

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding five thousand dollars damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

42 U.S.C. § 1986.

Plaintiff has failed to identify any specific acts or inactions by Defendants that support liability under 42 U.S.C. § 1986. Liability under 42 U.S.C. § 1986 is predicated on knowledge of a violation of 42 U.S.C. § 1985. Bell v. City of Milwaukee, 746 F.2d 1250, 1256 (7th Cir. 1984). As stated above, Plaintiff has not alleged any facts to support liability under 42 U.S.C. § 1985. Consequently, his claim under 42 U.S.C. § 1986 is dismissed. *Accord* Rouse v. Benson, 193 F.3d 936, 943 (8th Cir. 1999) (holding that inmate's allegations did not support liability under 42 U.S.C. §§ 1985(3) or 1986 as he failed to demonstrate a meeting of the minds of the alleged conspirators).

### F.  American with Disabilities Act Claim

In his Complaint, Plaintiff alludes to a violation of his rights under the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132.  [ECF No. 17, ¶ III].  Under Title II of the ADA, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Thus, in order to establish a violation under Title II, plaintiff must demonstrate: (1) that he is a qualified individual; (2) with a disability; and (3) that he was denied the opportunity to participate in or benefit from the services, programs, or activities of a public entity, or was otherwise subject to discrimination by that entity; (4) by reason of his disability. Bowers v. National Collegiate Athletic Ass'n, 475 F.3d 524, 553 n.32 (3d Cir. 2007).

Reading Plaintiff's Complaint and Amended Complaint broadly, Plaintiff appears to claim that he is mentally ill and that because he is mentally ill, he was entitled to an in-person psychological evaluation and hearing prior to his placement in the SMU.  He does not contend, however, that he was denied the opportunity to participate in or benefit from any particular program or service or that, because of his alleged disability, he was subject to discrimination.  Additionally, he has not alleged that his placement in the SMU for having a misconduct report constituted disparate treatment based upon his alleged mental illness or was a discriminatory assignment in comparison to other prisoners who were not mentally ill and who receive a misconduct report for assaulting staff members.  As this Court has previously held, the implication that the Plaintiff "could not be disciplined by being placed in the RHU because it would be detrimental to his mental health and thus violative of the ADA … is not denial of a service or program under such statutes…. The Court does not believe the ADA … requires

21

housing of disabled inmates in a certain level of confinement, a certain institution, or a certain security level as such assignments are primarily matters of security delegated to the discretion of the individual state correctional departments." <u>Scherer v. Pennsylvania Dept. of Corrections</u>, C.A. No. 3:04-191, 2007 WL 4111412, at *9 (W.D. Pa. 2007), *citing* <u>Meachum v. Fano</u>, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451, 459 (1976) (finding the due process clause does not create a right to hearing prior to a prisoner's transfer from one prison to another).  Based on Plaintiff's failure to assert the requisite elements of a cause of action under the ADA, the claim is dismissed.

## VIII.   STATE CLAIMS

The remaining allegations to be considered are Plaintiff's state law claims arising out of alleged violations of the Pennsylvania Confidentiality of HIV-Related Information Act, 71 P.S. § 1690.108(c), the Pennsylvania Drug and Alcohol Abuse Control Act, 71 P.S. 1690.108, and the Pennsylvania Mental Health Procedures Act, 50 P.S. § 710.  This Court may exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367, which states, in relevant part:

> ... in any civil action over which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the Constitution.

28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1367(c)(3), this Court may decline to exercise supplemental jurisdiction over a claim in subsection (a) if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Because we have dismissed all of the federal claims alleged by Plaintiff, this Court declines to exercise

supplemental jurisdiction over Plaintiff's state law claims in this case. Accordingly, Plaintiff's state law claims are dismissed.


An appropriate order follows.

BY THE COURT,


/s/  MAUREEN P. KELLY
U.S. Magistrate Judge

September 15, 2011

cc:  All counsel of record via CM/ECF
     Plaintiff via U.S. mail at his address
     of record.